IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CORY NIXON, JOHN KIRBY, LANE CHAPMAN,
MICHAEL BARNETT, CHRIS DISMUKE, CODY GLAZE,
LOUIS JOHNSON, JOSH MCSPADDEN, PHILLIP NELSON,
GLYNN TAYLOR, JAMES WALKER, ARTHUR WHEELER,
STEVEN WHITE, SHANE WILLIAMS, each individually and
on behalf of others similarly situated                                      PLAINTIFFS

vs.                                   Case No. 4:13-cv-00726-JM

ETS OILFIELD SERVICES L.P.,
DEVIN NEVILLES, and JOE COX,
individually and as Owners/Managers
of ETS Oilfield Services L.P.                                               DEFENDANTS

---

PLAINTIFFS' BRIEF IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT

---

## I. INTRODUCTION

This is a case for unpaid overtime under the Fair Labor Standards Act. Defendant

ETS Oilfield Services L.P. ("ETS") provides services to oil and gas wells scattered across

the United States. ETS employs a number of job classifications to provide these services,

including equipment operators, foremen, and fluid engineers. Until the end of December

of 2013, ETS operated a "mulching" division. The mulching division cleared out land and

right-of-ways, usually to prepare for later well drilling. To clear out land, ETS hired

"equipment operators" who operated equipment such as mulchers and trackhoes. ETS

also hired "foremen," who primarily worked on job projects. Although foremen

occasionally coordinated some aspects of projects alongside other employees, they had

no involvement with hiring and firing, and projects were largely set in stone by Joe Cox,

ETS's operations manager for the mulching division.

ETS also operates a "fluids" division. The fluids division mixes chemicals, like lubricants, to help control pressures for frack-drilling operations. To perform this service, ETS hires "fluid engineers" who operate mixing plants. Despite the title, fluid engineers are not "engineers" at all—they do not have any specialized academic training and their work does not require advanced knowledge. Instead, only a little on-the-job training is needed to become a "fluid engineer."

Equipment operators, foremen, and fluid engineers are all paid a salary and are not paid for any overtime regardless of their job duties. ETS did not investigate the law or try to determine whether it could properly classify these employees as exempt from the overtime requirements of the FLSA. Instead, as Devin Nevilles, the owner of ETS, testified: "that's the way we've always done it." ETS watched Plaintiffs work long hours without proper compensation, despite ETS being aware of the FLSA's requirements. ETS' pay practices violate the FLSA, and Plaintiffs' motion for summary judgment should be granted.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the movant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine

issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).

## III. ARGUMENT

Plaintiffs move for summary judgment on several issues. First, equipment operators, foremen, and fluid engineers are not exempt from the overtime requirements of the FLSA. Second, Plaintiffs Louis Johnson and Arthur Wheeler are not independent contractors. Third, ETS willfully and without good faith violated the FLSA when it classified equipment operators, foremen, and fluid engineers as exempt, thus Plaintiffs are entitled to a three-year statute of limitations and liquidated damages. Fourth, Devin Nevilles is the employer of all of the Plaintiffs and Joe Cox is the employer of the equipment operator and foremen Plaintiffs.[1] And fifth, the fluctuating workweek method of calculating damages is inapplicable and certain nondiscretionary bonuses should be calculated into the regular rate of pay. Each of these issues will be discussed in turn.

1. *Equipment Operators, Foremen, and Fluid Engineers Are Not Exempt Employees.*

Generally, the FLSA requires that employers pay their employees time and a half for all hours worked over forty in any given workweek. *Bennett v. City of Gould*, No. 5:06CV00182, 2007 U.S. Dist. LEXIS 31746, at *4 (E.D. Ark. Apr. 27, 2007) (citing 29 U.S.C. § 207(a)(1)). However, an employer can avoid paying overtime if an individual qualifies for one of the Act's exemptions. *Id.* (citing 29 U.S.C. § 213(a)(1)). ETS bears the burden to

---

[1] Plaintiffs are classified as follows: **Equipment Operators—**Michael Barnett, Christopher Dismuke, Michael Gilbert, Charles Glaze, James Gowen, Louis Johnson, John Kirby, Josua McSpadden, Steve Miller, Phillip Nelson, Cory Nixon, Glynn Taylor, James Walker, Arthur Wheeler, and Shane Williams; **Foremen—**Lane Chapman; **Fluid Engineers—**Jose Alvarez, Andres Cardenas, Todd Cochran, Richard Johnson, Suniga Cruz, Javier Zamarripa, and Steven White.

prove that one of these exemptions applies by "demonstrating that [its] employees fit plainly and unmistakably within the exemption's terms and spirit." *Id.* at *5 (quoting *Spinden v. GS Roofing Products Co.*, 94 F.3d 421, 426 (8th Cir. 1996)). In its Answer, ETS claims that equipment operators, foremen, and fluid engineers are exempt, but it does not identify any exemption that it claims. (Doc. 39 at ¶ 94). However, Defendants Joe Cox and Devin Nevilles could not identify any specific exemption that ETS claimed. **(SUMF ¶¶ 90, 109)**. Plaintiffs are entitled to summary judgment for this reason alone. *See Johnson v. Derhaag Motor Sports, Inc.*, No. 13-cv-2311, 2014 U.S. Dist. LEXIS 158845, at *57–58 (D. Minn. Nov. 10, 2014) (noting that the Defendant failed to put the Plaintiff on notice of the motor carrier exemption and that Plaintiff was prejudiced because of his inability to conduct discovery). Regardless, Plaintiffs have analyzed the facts under the most-common exemptions.

      a.      Equipment Operators, Foremen, and Fluid Engineers
              Do Not Quality For the Executive Exemption.

In order for an employee to be an exempt executive employee, he or she must have management[2] as his or her primary duty, must customarily and regularly direct the work of two or more employees, and must have the authority to hire or fire or whose

---

[2] The regulation provides: "Generally, 'management' includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machine, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102.

suggestions and recommendations as to the hiring or firing or other changes in employment must be given particular weight. 29 C.F.R. § 541.100. Equipment operators, foremen, and fluid engineers are not exempt executive employees.

Equipment operators were responsible for operating and maintaining heavy equipment. **(SUMF ¶ 3)**. They did not have any management duties, did not have any involvement with hiring and firing, and any suggestions as to hiring and firing were not given any particular weight. **(SUMF ¶¶ 11–23)**. Equipment operators and the rest of the crew just worked together to get the land-clearing projects completed. **(SUMF ¶ 25)**.

There is not much difference between the job of a foreman and that of an equipment operator. **(SUMF ¶ 3)**. Foremen were not "bosses." **(SUMF ¶ 30)**. They did not have any involvement with hiring or firing. **(SUMF ¶ 31)**. They did not direct other employees' work, but rather performed the same manual labor as the other employees. **(SUMF ¶ 35)**. Nor did they coordinate projects alone; the crews had pre-job meetings where Joe Cox would outline how projects would move forward. **(SUMF ¶¶ 29, 38)**. Any communications with customers were at the direction of Joe Cox. **(SUMF ¶¶ 34, 37, 39)**. Foremen sometimes complete paperwork outlining the work that was completed, but other employees also complete this paperwork as well. **(SUMF ¶ 36)**. But they have nothing to do with billing customers. **(SUMF ¶ 37)**.

Foremen did not apportion work among employees. **(SUMF ¶ 40)**. Foremen did not have any involvement in setting or adjusting rates of pay. **(SUMF ¶ 41)**. They did not have any involvement with setting the schedules of employees. **(SUMF ¶ 42)**. They did not have any involvement in disciplining employees. **(SUMF ¶ 43)**. Nor did they have

the responsibility to appraise employees' work or recommend promotions. **(SUMF ¶ 44)**.

Similarly, fluid engineers operate a mixing plant and mix chemicals, like lubricants, to assist in the drilling process. **(SUMF ¶ 6)**. In fact, "fluid engineers" are now known as "fluid hands." **(SUMF ¶ 66)**. Fluid engineers do not have any management duties, and they do not have any involvement with hiring and firing. **(SUMF ¶ 75)**.

Equipment operators and foremen in the mulching division and fluid engineers are not exempt executives. They spend their time performing manual labor and operating equipment, not managing. Nor do they have any involvement in hiring and firing. There is no genuine issue of material fact that ETS cannot meet its stringent burden in showing that these employees are exempt from the FLSA.

      b.    Equipment Operators, Foremen, and Fluid Engineers
            Do Not Quality For the Professional Exemption.

In order to be an exempt professional employee, an employee's primary job must be the performance of work that requires advanced knowledge in a field of science or learning. *Smith v. Frac Tech Servs., LLC*, 2011 U.S. Dist. LEXIS 3165, at *22 (E.D. Ark. Jan. 11, 2011) (citing 29 C.F.R. § 541.301(a)). The advanced knowledge also must be customarily acquired by a prolonged course of specialized intellectual instruction. *Id.* (citing 29 C.F.R. § 541.301(a)). This element "restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance to the profession." *Id.* at *23 (quoting 29 C.F.R. § 541.301(d)). "The learned professional exemption . . . does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction." *Id.* (citing 29 C.F.R. §

541.301(d)).

Here, it is undisputed that equipment operators, foremen, and fluid engineers do not perform work that requires advanced knowledge acquired by a prolonged course of specialized intellectual instruction. On the contrary, equipment operators, foremen, and fluid engineers only go through some on-the-job training. **(SUMF ¶¶ 28, 46, 74)**. As a result, equipment operators, foremen, and fluid engineers are not exempt professional employees.

       c.     Equipment Operators, Foremen, and Fluid Engineers
                Do Not Quality For the Administrative Exemption.

In order to be an exempt administrative employee, an individual must have as his or her primary duty the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers.[3] *Smith*, 2011 U.S. Dist. LEXIS 3165, at *19–20). The employee's primary duty include the exercise of discretion and independent judgment with respect to matters of significance. *Id.* (citing 29 C.F.R. § 541.200(a)). Work that directly generates the product or service that the employer provides is "production work," which falls outside the administrative exemption. *Id.* at *21 (citing *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 517 (6th Cir. 2004)).

Here, equipment operators, foremen, and fluid engineers are performing simple

---

[3] Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control' purchasing; procurement; advertising; marketing; research; safety and health; personnel management' human resources; employee benefits; labor relations; public relations; government relations; computer network; internet and database administration; legal and regulatory compliance; and similar activities. 29 C.F.R. § 541.201.

"production work," which is insufficient to meet ETS' burden under the administrative exemption. Equipment operators' only responsibility is to operate equipment safely. **(SUMF ¶ 3)**. Foremen spend the majority of their time doing manual labor such as operating equipment and doing other production work. **(SUMF ¶ 3)**. Similarly, fluid engineers filled out "field tickets" outlining the work completed, but this was only secondary to their main job of operating a mixing plant. **(SUMF ¶¶ 6, 70)**. There is no genuine issue of material fact that equipment operators, foremen, and fluid engineers are not exempt administrative employees.

2.   *Louis Johnson and Arthur Wheeler are Not Independent Contractors.*

ETS claims that Plaintiffs Louis Johnson and Arthur Wheeler are independent contractors not subject to the requirements of the FLSA. There is no evidence to support ETS' assertion. "The label the parties put on the relationship is not determinative, nor is it relevant whether the parties intended to create an employment relationship." *Molina v. S. Fla. Express Bankserv, Inc.*, 420 F. Supp. 2d 1276, 1283 (M.D. Fla. Mar. 8, 2006) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1946)). This Court must determine whether Mr. Johnson and Mr. Wheeler were "as a matter of economic reality, in business for [themselves]." *Id.* (quoting *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998)). To determine this, this Court should look at several factors, including the degree of control exercised by the alleged employer; the extent of the relative investments of the worker and the alleged employer; the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; the skill

and initiative required in performing the job; and the permanency of the relationship. *Id.* (citing *Herman*, 161 F.3d at 303).

Louis Johnson and Arthur Wheeler were hired on as laborers and then equipment operators during a project ETS had in Oklahoma. **(SUMF ¶ 48)**. Upon hire, they were paid the same amount as the other equipment operators and performed the same job. **(SUMF ¶¶ 48, 50, 52–53)**. **(SUMF ¶¶ 45, 50)**. They received a handbook, signed safety documents, and even filled out employee paperwork. **(SUMF ¶¶ 56–58)**. ETS also owned the equipment that they used. **(SUMF ¶¶ 51, 59)**.

Their day-to-day experience at work also supports the conclusion that Louis Johnson and Arthur Wheeler are employees. They did not perform any management, nor did they invest in any equipment. **(SUMF ¶¶ 61–62)**. Barry Conder and Joe Cox set their hours of work and decided what work was to be completed. **(SUMF ¶¶ 63–64)**. Towards the end of his employment, Johnson was even sent to Arkansas to do maintenance on equipment. **(SUMF ¶ 54)**. ETS also tried arguing Arthur Wheeler was an independent contractor at a Worker's Compensation hearing, but ETS lost the issue. **(SUMF ¶ 110)**.

This is not the kind of temporary, independent work done by a contractor. For all intents and purposes, Louis Johnson and Arthur Wheeler were just like everyone else, operating equipment. They were told what to do on a daily basis, told when to be at work, and did not exercise any great skill. Nor did they invest in their own business or their own equipment. They were paid similarly to the other equipment operators, performed the same work,  received the same documents, filled out the same documents, and did not supply any of their own equipment nor have their own business. The undisputed

material facts show that Louis Johnson and Arthur Wheeler were employees, not independent contractors.

      3.    *ETS' Violations of the FLSA Were Willful and Lack Good Faith.*

The statute of limitations for claims under the FLSA is two years unless the plaintiff can show that the defendant's violation was willful. *Brown v. L & P Indus.*, No. 5:04CV0379, 2005 U.S. Dist. LEXIS 39920, at *26–27 (E.D. Ark. Dec. 21, 2005) (quoting 29 U.S.C. § 255(a)). An FLSA violation is willful if "' the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited.'" *Id.* at *27 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "[A]n employer's conduct shall be deemed to be in reckless disregard of the requirements of the Act, among other situations, if the employer should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry." 29 C.F.R. § 578.3(c).

In addition, an equal amount of liquidated damages is the norm in FLSA cases. *Gomez v. Tyson Foods, Inc.*, No. 8:08CV21, 2013 U.S. Dist. LEXIS 24916, at *47–48 (D. Neb. Feb. 11, 2013). To avoid liquidated damages, an employer must have subjective "good faith" and had "objectively reasonable grounds" for believing that its acts did not violate the FLSA. *Id.* at *48. The employer bears the "difficult" burden of proving subjective good faith and objective reasonableness. *Id.* Generally, a finding of willfulness precludes a finding of good faith. *See, e.g., Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 921 (D. Minn. 2010).

This case is similar to *Brown v. L & P Industries.* 2005 U.S. Dist. LEXIS 39920, at *30.

There, Brown worked for a furniture company as a "Finish Line Supervisor." *Id.* at *3–4. The defendant paid Brown on an hourly basis, but refused to pay her for overtime. *Id.* at *4. The defendant never consulted an attorney or the Department of Labor to verify whether Brown was exempt. *Id.* at *30. Hendrickson, the company's owner, testified that he would have never even researched the exemption issue if Brown had not filed suit. *Id.* The court noted that the Defendant knew how to look into the issue, but refused over many years to make a minimal effort to do so. *Id.* at *33.

The same is true here. Devin Nevilles, ETS' sole owner, testified that ETS did not bother to investigate the legality of its pay practices. **(SUMF ¶¶ 79–81, 85–87, 90)**. Instead, ETS blindly classified its employees as exempt, only because that's "the way [they've] paid for the last 20 years." **(SUMF ¶¶ 79, 86)**.

"Courts have found that an employer's failure to inquire whether its policies violate the FLSA can constitute a willful violation." *Koehler v. Freightquote.com, Inc.*, No. 12-cv-2505, 2015 U.S. Dist. LEXIS 89691, at *81 (D. Kan. July 10, 2015) (citing *Hardrick v. Airway Freight Sys., Inc.*, 63 F. Supp. 2d 898, 904 (N.D. Ill. 1999)). Devin Nevilles was responsible for paying employees a salary and classifying them as exempt. **(SUMF ¶¶ 79–80)**. And he was also aware of the existence of the Fair Labor Standards Act and the fact that only certain employees could be classified as exempt. **(SUMF ¶ 87)**. Despite this knowledge, Nevilles and ETS did not perform any investigation into its pay practices and continued to pay their employees a salary based solely on tradition. Moreover, ETS did not accurately keep track of the hours worked by equipment operators, foremen, and fluid engineers. **(SUMF ¶¶ 88–89)**. *See Swan v. Nick Grp., Inc.*, No. 1:11-cv-1713, 2013 U.S.

Dist. LEXIS 130837, at *31–32 (N.D. Ga. Sept. 12, 2013) (holding that the fact the employer failed to keep accurate records despite being aware of the existence of the FLSA supports a finding of willfulness). ETS should have investigated into whether its pay practices complied with the FLSA, but willfully chose not to do so.

This is especially the case when ETS knew many of its employees were just laborers. *See Greene v. Westwood Prop. Mgmt., LLC*, No. 3:07-0955, 2009 U.S. Dist. LEXIS 40388, at *44–45 (M.D. Tenn. May 12, 2009) ("holding that the Defendant's violations were willful because it knew the Plaintiffs were not performing exempt tasks); **(SUMF ¶¶ 3, 6)**. ETS' blanket classification of its workforce as exempt without regard to actual job duties is contrary to the FLSA. ETS did not bother to investigate the legality of these classifications, though it is clear it should have and simply paid the vast majority of its employees a salary. **(SUMF ¶ 7)**. As a result, ETS' violations were willful and lack good faith. Therefore, Plaintiffs are entitled to a three-year statute of limitations and liquidated damages. ETS cannot have an objectively reasonable belief if it conducted no investigation. Based on a review of Plaintiffs' employment records, they have done their best to determine hire and termination dates. Attached is a table outlining the relevant statutory period for each Plaintiff should the Court find ETS' violations willful. (*Table of Employment Dates* [Ex. J]).

4.    *Devin Nevilles is the Employer of All Plaintiffs Under the FLSA.*

The definition of "employer" under the FLSA can expose individuals to liability for overtime violations. *Solis v. Hill Country Farms, Inc.*, 808 F. Supp. 2d 1105, 1115 (S.D. Iowa 2011) (citing *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002)). A corporate officer

with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages. *Id.* (citing *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). Corporate officers that have operational control of significant aspects of a corporation's day-to-day functions, such as making decisions regarding the compensation of employees and the nonpayment of employees' wages are properly considered employers under the FLSA. *Id.* at 1115. Other factors include whether the individual has the right to hire and fire employees and whether they provide management or direction of the business. *Id.*

To be an employer under the FLSA, an individual does not have supervise employees on a daily basis. *See Irizarry v. Catsimatidis*, 722 F.3d 99, 108–09 (2d Cir. 2013). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. He or she doesn't need to come directly in contact with the plaintiffs, their workplaces, or their schedules to have operational control. *Id.* Nor does an individual have to actually exercise the power regularly. *Id.* In *Irizarry*, the United States Court of Appeals for the Second Circuit noted several factors courts consider when determining whether an individual is an "employer" under the FLSA: (1) whether the individual has the power to hire and fire; (2) whether the individual supervised and controlled employee work schedules or conditions of employment; (3) whether the individual determined the rate and method of payment; (4) whether the individual maintained employment records. *Id.* at 115–16. The Court noted that the Defendant was individually liable because of his hiring of managerial employees, his

financial control over the company, his responsibility for employees' wages, and his supervision of managerial employees. *Id.* at 117.

Just like in Irizarry, Devin Nevilles is an "employer" of all Plaintiffs under the FLSA. He is the sole owner of ETS. **(SUMF ¶ 76)**. He is ultimately responsible for the policies and procedures of ETS. **(SUMF ¶ 76)**. He has the ultimate right to hire or fire any employee of ETS **(SUMF ¶ 77)**. He has the ultimate ability to set rates of pay and revise policies or procedures. **(SUMF ¶ 78)**. He ultimately determines to classify employees as exempt from the FLSA. **(SUMF ¶ 80)**. The decision to pay an employee a salary is up to Nevilles, and he ultimately approves bonuses. **(SUMF ¶¶ 79, 82)**. He also sets the policy as to when employees are paid **(SUMF ¶ 83)**. The decision to use inaccurate field tickets to track the hours worked for equipment operators and fluid engineers was made by Nevilles. **(SUMF ¶¶ 88–89)**. Nevilles hires and fires ETS management. **(SUMF ¶ 91)**. He is also consulted on important issues. **(SUMF ¶ 92)**. And everyone in the company ultimately answers to Devin Nevilles, and he is responsible for the ultimate management decisions. **(SUMF ¶ 84)**. There is no genuine issue of material fact that Nevilles exercises sufficient control over Plaintiffs' conditions of employment to be an "employer" under the FLSA. Therefore, he is jointly and severally liable for ETS' FLSA violations.

     *5.*    *Joe Cox is an Employer of Plaintiffs in the Mulching Division.*

Similarly, Joe Cox is also an "employer," but just of the equipment operators and foremen[4] in the mulching division. He would stop by the job sites to ensure the work was

---

[4] Plaintiffs concede that Joe Cox was not an "employer" of the fluid engineers.

completed to appropriate standards. **(SUMF ¶ 94)**. He would hand down mulching techniques to be used by the equipment operators. **(SUMF ¶ 95)**. Joe Cox's had the responsibility to delegate how to perform a particular job in the mulching division. **(SUMF ¶ 107)**. Cox was also making decisions relating to the management of the mulching division. **(SUMF ¶¶ 93, 96–99, 102, 106)**. He was also responsible for hiring employees and setting their rates of pay. **(SUMF ¶ 100)**. Joe Cox even testified at a Worker's Compensation hearing for Arthur Wheeler. **(SUMF ¶ 110)**.

Here, there is no genuine issue of material fact that Joe Cox exercised sufficient control over the equipment operators and foremen in the mulching division to be an "employer" under the FLSA. He is hiring employees, setting their pay, and otherwise managing the mulching division. Joe Cox is jointly and severally liable for ETS' violations as to the equipment operator and foremen Plaintiffs.[5]

   6.   *Calculating Damages and the Fluctuating Workweek.*

The fluctuating workweek is a method of calculating damages in a FLSA case. If the fluctuating workweek applies, the hourly rate of pay for a salaried employee is calculated by dividing the weekly wage by the total number of hours that the employee worked in a given week, not forty. *Smith v. Frac Tech Servs., LLC*, No. 4:09CV00679, 2011 U.S. Dist. LEXIS 3165, at *110 (E.D. Ark. Jan. 11, 2011) (citing *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 666 (7th Cir. 2010)). Ultimately, the fluctuating workweek reduces damages in two ways: first, the regular rate is reduced because the hourly rate is

---

[5] **Equipment Operators—**Michael Barnett, Christopher Dismuke, Michael Gilbert, Charles Glaze, James Gowen, Louis Johnson, John Kirby, Josua McSpadden, Steve Miller, Phillip Nelson, Cory Nixon, Glynn Taylor, James Walker, Arthur Wheeler, and Shane Williams; **Foremen—**Lane Chapman.

determined by dividing the salary by the total hours worked, not forty, and second, the overtime rate is reduced to 50% of the hourly rate, not the normal 150%. *Id.* (citing *Urnikis-Negro*, 616 F.3d at 672. The factual issue regarding the application of the fluctuating workweek is whether the salary is intended to compensate the employee for *all* of the hours worked. *Id.*

       a.      Equipment Operators and Foremen.

Equipment operators and foremen understood that their salary was only to compensate for a 50-hour workweek, not all hours worked or a fluctuating workweek. **(SUMF ¶ 9)**. Therefore, they did not understand that their salary was to compensate them for all hours worked.

       b.      Fluid Engineers.

In addition, fluid engineers received nondiscretionary "day bonuses" each day they operated a mixing plant. These nondiscretionary "day bonuses" affect the calculation of damages in two ways: first, it makes inapplicable the fluctuating workweek method of calculating damages and second, these bonuses have to be considered when calculating the regular rate of pay. *See Caraballo v. City of Chi.*, 969 F. Supp. 2d 1008, 1017 (N.D. Ill. 2013); *Smith v. Frac Tech Servs., LLC*, No. 4:09CV00679, 2011 U.S. Dist. LEXIS 64079, at *13–15 (E.D. Ark. June 15, 2011).

Under the FLSA regulations, "nondiscretionary" bonuses include any bonuses made "pursuant to any prior contract, agreement, or promise." 29 C.F.R. § 778.211(c). The regulation goes on to provide examples of nondiscretionary bonuses:

       Bonuses which are announced to employees to induce them

> to work more steadily or more rapidly or more efficiently or
> to remain with the firm are regarded as part of the regular rate
> of pay. Attendance bonuses, individual or group production
> bonuses, bonuses for quality and accuracy of work, bonuses
> contingent upon the employee's continuing in employment
> until the time the payment is to be made and the like are in
> this category. They must be included in the regular rate of
> pay.

Likewise, even if the amount of the bonus is discretionary, as long as the *fact* of the bonus isn't, the bonus is still nondiscretionary. 29 C.F.R. § 778.211(b). The bonuses are also nondiscretionary even if the bonus is contingent on conditions being fulfilled. *Caraballo*, 969 F. Supp. 2d at 1017. Bonuses that are not attributable to hours worked must still be calculated in the regular rate of pay if nondiscretionary. *Id.*

Under the FLSA, if employees receive nondiscretionary bonuses as a part of their pay, the fluctuating workweek method of calculating damages cannot be used. *Sisson v. Radioshack Corp.*, No. 1:12CV958, 2013 U.S. Dist. LEXIS 40135, at *17–18 (N.D. Ohio Mar. 11, 2013); *Smith*, 2011 U.S. Dist. LEXIS 64079, at *13–15. This is because if an employee receives bonuses, he or she is not receiving a set salary for all hours worked. The Department of Labor, Wage and Hour Division addressed this issue in its April 5, 2011 Interpretive Bulletin. (*Federal Register* [Ex. K]). There, the Department of Labor had to determine whether bonuses defeat the fluctuating workweek. *Id.* The Department of Labor noted:

> While the Department continues to believe that the payment
> of bonus and premium payments can be beneficial for
> employees in many other contexts, we have concluded that
> unless such payments are overtime premiums, they are
> incompatible with the fluctuating workweek method of
> computing overtime. . .

*Id.* The Department of Labor stated that allowing these types of bonuses would defeat the purpose of the fluctuating workweek because it would result in wide disparities in employees' weekly pay, which is inconsistent with the purpose of the fluctuating workweek. *Id.* at 18850. Employers would be incentivized in shifting a large portion of employees' compensation to bonuses. *Id.* at 18550.[6]

Fluid engineers were promised and received "day bonuses" for each day they worked while the mixing plant was operational. **(SUMF ¶ 71)**. As a result, these bonuses were nondiscretionary. Because fluid engineers received these bonuses, they were not paid "a *fixed* weekly wage for hours that fluctuate from week to week." *Clark v. Shop24 Global, LLC*, No. 2:12-cv-802, 2015 U.S. Dist. LEXIS 5496, at *36 (S.D. Ohio Jan. 16, 2015) (quoting *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 674 (7th Cir. 2010)). Promising bonuses is "conduct inconsistent with an agreement between the parties for a fixed weekly wage as compensation for fluctuating work hours." *Id.* at *46. Therefore, the fluctuating workweek method of calculating damages is inapplicable here and the bonuses have to be taken into consideration when calculating the fluid engineer Plaintiffs' regular rate of pay.

---

[6] ETS may argue that the Interpretive Bulletin is irrelevant because it is interpreting 29 C.F.R. 778.114(a) and not the Supreme Court of the United States' decision in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942). As the Court noted in *Smith v. Frac Tech*, the authority for calculating damages under the fluctuating workweek is the Supreme Court of the United States' decision in *Missel*, not 29 C.F.R. 778.114(a). *Smith v. Frac Tech Servs., LLC*, No. 4:09CV00679, 2011 U.S. Dist. LEXIS 3165, at *114–115 (E.D. Ark. Jan. 11, 2011). The Department of Labor, however, analyzed the proposed regulations under *Missel*. (*Federal Register* [Ex. K] at 18850) ("[T]he Department now believes that the proposed regulation would have been inconsistent with the requirement of a fixed salary payment set forth by the Supreme Court in *Overnight Motor Transport v. Missel*.").

## V. Conclusion

The Plaintiffs are not exempt employees. They perform routine, manual labor, they do not exercise management duties, and they do not have any specialized education or training. As a result, the Plaintiffs do not fit squarely within any exemption to the FLSA's overtime requirements. Moreover, Louis Johnson and Arthur Wheeler are just like the other equipment operators; merely because ETS calls them an independent contractor doesn't make it so. ETS' violations were willful and lack good faith because it never attempted to comply with or investigate the FLSA when it blindly classified its employees as exempt. Devin Nevilles, the sole owner of ETS, and Joe Cox, the operations manager for the mulching division, exercised operational control of the business and are therefore individually liable under the FLSA. Finally, because equipment operators and foremen understood that their salaries would cover only 50-hour workweeks and fluid engineers received nondiscretionary bonuses, the fluctuating workweek method of calculating damages does not apply and the bonuses must be calculated in the fluid engineers' regular rate of pay.

Respectfully submitted,

/s/ John Holleman
John Holleman – AR Bar #91056
jholleman@johnholleman.net
Timothy A. Steadman – AR Bar #2009113
tim@johnholleman.net
Matthew M. Ford – AR Bar #2013180
matthew@johnholleman.net

HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

## CERTIFICATE OF SERVICE

I, John Holleman, certify that a true and accurate copy of the foregoing document was sent via CM/ECF on this 19th day of August, 2015 to the following:

Michael S. Moore, mmoore@fridayfirm.com
Harold Wayne Young , Jr    wyoung@fridayfirm.com
Friday, Eldredge, & Clark, LLP
2000 Regions Center
400 West Capitol Avenue
Little Rock, AR 72201-3493
(501) 370-1526

/s/ John Holleman
John Holleman