IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CORY NIXON, JOHN KIRBY, LANE CHAPMAN,
MICHAEL BARNETT, CHRIS DISMUKE, CODY GLAZE,
LOUIS JOHNSON, JOSH MCSPADDEN, PHILLIP NELSON,
GLYNN TAYLOR, JAMES WALKER, ARTHUR WHEELER,
STEVEN WHITE, SHANE WILLIAMS, each individually and
on behalf of others similarly situated                         PLAINTIFFS

vs.                              Case No. 4:13-cv-00726-JM

ETS OILFIELD SERVICES L.P.,
DEVIN NEVILLES, and JOE COX,
individually and as Owners/Managers
of ETS Oilfield Services L.P.                                    DEFENDANTS

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

## I. INTRODUCTION

This is a case for overtime wages owed under the Fair Labor Standards Act. ETS

Oilfield Services L.P. ("ETS") provides oil and gas well completion services across the

United States. ETS is broken down into several divisions. Only two of those divisions are

at issue here—the now-defunct mulching division and the fluids division.

The mulching division was responsible for clearing out vegetation on pipeline

right-of-ways. To perform this function, ETS hired "equipment operators" and

"foremen." Equipment operators used equipment like mulchers and trackhoes to clear

out vegetation. Foremen helped coordinate jobs a little, but mostly performed the same

work as equipment operators. Equipment operators and foremen were not paid for

overtime.

The fluids division mixes chemicals used in frack-drilling operations. To do this, ETS hires "fluid engineers," and they are responsible for operating a piece of equipment called a mixing plant. The mixing plant is what mixes the chemicals, such as lubricants, that assist in the drilling process. Fluid engineers are not paid overtime despite working far more than 40 hours per week. Fluid engineers are paid a fixed wage and also receive a day bonus when the plant is operating.

Equipment operators, foremen, and fluid engineers are not exempt employees, and they should have been paid overtime. A lot has happened in this case; this Court certified a FLSA collective action with three classes, discovery has taken place, and motions have been filed. Now that all of the cards are on the table, ETS is playing the "play heads I win, tails you lose" game by seeking to enforce arbitration agreements after over a year of litigation and only a couple months before trial. ETS is moving for summary judgment on an issue related to each of the Plaintiffs it alleges is subject to the arbitration agreement and for decertification, while in the same breath seeking to enforce arbitration agreements. This is inefficient gamesmanship at its best. This Court should deny ETS' motion for partial summary judgment.

## II. PROCEDURAL HISTORY

Plaintiffs Cory Nixon, Lane Chapman, and John Kirby filed their initial Complaint on December 18, 2013. (Doc. 1). Cory Nixon and John Kirby were equipment operators for ETS' mulching division and Lane Chapman was a foreman. (Doc. 1 at ¶¶ 9–11). Shortly after the initial Plaintiffs filed their Complaint, more equipment operators began joining the case. *E.g.*, (Docs. 11–18). Plaintiff Steven Kyle White, the first fluid engineer,

filed his consent to join on May 19, 2014. (Doc. 22). Shortly thereafter, Plaintiffs moved to amend their Complaint to add Named Plaintiffs, including Steven Kyle White. (Doc. 24). This Court granted Plaintiffs' request. (Doc. 31). Around this same time, Plaintiffs moved to conditionally certify three *separate* classes — equipment operators, foremen, and fluid engineers. (Doc. 25). Two other fluid engineers, Richard Johnson and Todd Cochran, also joined the case. (Docs. 29–30).

ETS filed its Answer to Plaintiffs' First Amended Complaint on August 7, 2014. (Doc. 39). ETS filed its response to Plaintiffs' motion for conditional certification on September 3, 2014. (Doc. 40). ETS has participated in discovery, including taking several depositions. After the close of discovery, Plaintiffs filed a motion for summary judgment regarding a number of issues. (Doc. 66). ETS then moved to decertify the classes, and it also filed the instant motion for summary judgment.

### III. Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the movant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).

# IV. ARGUMENT

ETS moves for summary judgment on three issues. First, ETS moves for summary judgment on Plaintiff Cory Nixon's retaliation claim. Second, ETS claims two Plaintiffs, Richard Johnson and Jose Alvarez, must be dismissed because of an arbitration agreement. Third, ETS claims that the fluctuating workweek method of calculating damages applies to all of the Plaintiffs. Plaintiff Cory Nixon is voluntarily dismissing his retaliation claim, so the first issue is moot. Plaintiffs now address the other two issues.

1.     *The Arbitration Agreement.*

Plaintiffs do not dispute that FLSA claims and the class-action mechanism are proper subjects of an arbitration agreement. *See* (Doc. 72 at 7–9). Rather, Plaintiffs' response boils down to three points. First, Richard Johnson never signed the arbitration agreement. Second, ETS has waived the arbitration venue. And third, summary judgment is not the proper vehicle to demand arbitration.

Plaintiffs filed their Complaint on December 18, 2013. (Doc. 1). A few months later, ETS began forcing its employees to sign an arbitration agreement. The arbitration agreement entices the employee to sign, claiming that arbitration is quicker and cheaper. The agreement reads:

> I understand that the purpose of this Agreement is to provide both the Company and myself a way in which claims or disputes may be resolved by binding arbitration rather than litigation in recognition of the fact that resolution of any differences in courts is rarely time or cost effective for either party, the Company and I have entered into this Agreement to establish and gain the benefits of a speedy, impartial, and cost-effective dispute resolution procedure.

It is undisputed that Jose Alvarez signed the arbitration agreement. (Doc. 71-3). Richard Johnson, however, clearly refused to sign the arbitration agreement, so ETS cannot compel him to arbitrate. The arbitration agreement given to Richard Johnson states: "Refusal of Signature. . . Do not sign away my rights" and then is initialed. (Doc. 71-3). Although the original signature is scratched out, Richard Johnson testified that he had never turned in the arbitration agreement signed. **(Resp. SUMF ¶ 9)**. The arbitration agreement could not be clearer—Richard Johnson did not agree to arbitrate or to give up his rights to join this collective action. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration of any dispute which [it] has not agreed so to submit." *U.S. Aprons, Inc. v. R-Five, Inc.*, 676 F. Supp. 2d 837, 841 (D. Neb. 2009) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)).

Furthermore, ETS cannot move to compel arbitration because it waited too long. ETS cannot sit back, participate in litigation, figure out the strength of Plaintiffs' position, and then move to arbitrate. ETS acted inconsistently with its right to arbitrate, and Plaintiffs are prejudiced by its inexcusable delay. ETS' request to send Richard Johnson and Jose Alvarez into arbitration should be denied.

2.     *ETS Has Waived the Arbitration Venue.*

By acting inconsistent with its right to arbitrate, ETS waived the arbitration venue. The United States Court of Appeals for the Eighth Circuit reviews a legal determination of waiver de novo, but the factual findings underlying the ruling are reviewed for clear error. *Hooper v. Advance Am.*, 589 F.3d 917, 920 (8th Cir. 2009) (quoting *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007)). Courts apply a three-part test to

determine whether a party has waived its right to proceed with arbitration. The party must (1) know of its existing right to arbitration; (2) act inconsistently with that right; and (3) prejudiced the other party by its inconsistent actions. *Id.* (citing *Dumont v. Saskatchewan Gov't Ins.*, 258 F.3d 880, 886 (8th Cir. 2001)). Courts should look at the totality of the circumstances when analyzing whether a party waived arbitration. *Id.* at 922.

A.      Knowledge.

There is no dispute that ETS knew about its right to arbitrate. It referred to the arbitration agreements in its response to Plaintiffs' motion for conditional certification. (Doc. 40 at 7–8). This part of the test is met. *See Hooper*, 589 F.3d at 920–21.

B.      Inconsistent Action.

"A party acts inconsistently with its right to arbitrate if the party 'substantially invokes the litigation machinery before asserting its arbitration right.'" *Id.* at 921 (quoting *Lewallen*, 487 F.3d at 1090). "To safeguard its right to arbitration, a party must 'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Id.* at 922 (quoting *Lewallen*, 487 F.3d at 1091). Inconsistent action can manifest in many different ways.

For example, in *Hooper v. Advance America*, the defendant acted inconsistent with its right to arbitration because it sought a decision on the merits on several claims through a motion to dismiss. 589 F.3d at 922. The United States Court of Appeals for the Eighth Circuit found the defendant had waived its right to arbitrate. *Id.* at 924. In *Lewallen v. Green Tree Servicing*, a homeowner and a lender signed an arbitration agreement relating to a home equity loan. The relationship went awry after the homeowner filed for

bankruptcy. *Id.* at 1087–88. The defendant filed a proof of claim in the bankruptcy proceeding. 487 F.3d at 1091. The plaintiff then filed an objection to the proof of claim and alleged that the defendant violated the "Real Estate Settlement Procedures Act." *Id.* at 1091. The homeowner's claims were subject to the arbitration provision. *Id.*

The United States Court of Appeals for the Eighth Circuit outlined several facts that showed the lender acted inconsistent with the arbitration agreement. The lender never mentioned the arbitration agreement in response to the homeowner's objection to the proof of claim. *Id.* The court later had a hearing on the objection, and the lender never mentioned arbitration and even asked the bankruptcy court to overrule the objection, stating "these issues can only be resolved in an adversary proceeding." *Id.* The lender also served discovery, sought an extension of time to respond to the homeowner's complaint, and participated in a joint motion to continue the trial date. *Id.* The first time the lender tried to enforce the arbitration agreement was in a motion to dismiss, eleven months later. *Id.* at 1091–92. The delay alone was inconsistent with the lender's right to arbitrate. *Id.* at 1092.

In *Southeastern Stud & Components, Inc. v. American Eagle Design Build Studios, LLC*, the parties entered into a subcontract work agreement that contained an arbitration clause. 588 F.3d 963, 965 (8th Cir. 2009). A dispute arose involving payment for work performed under the contract. *Id.* at 966. Southeastern then filed suit. *Id.* But, American Eagle did not move to compel arbitration, and instead answered Southeastern's complaint, filed responses and objections to SES's request for production of documents, and filed a motion for judgment on the pleadings without bringing up the arbitration

issue. *Id.* In upholding the district court's decision that American Eagle had waived the arbitration venue, the United States Court of Appeals for the Eighth Circuit noted that a thirteen-month delay was inconsistent with its right to arbitrate. *Id.* at 969.

The facts in *Webster Grading, Inc. v. Granite Re, Inc.* are very similar to *Southeastern Stud & Components*. 879 F. Supp. 2d 1013, 1014 (D. Minn. 2012). That case also involved a construction contract that fell apart. *Id.* Complicated litigation ensued between a general contractor, subcontractors, and bond companies. *Id.* at 1017–18. But then the general contractor sought to enforce an arbitration agreement between it and a subcontractor after fifteen months of litigation. *Id.*

The United States District Court for the District of Minnesota concluded that the general contractor had acted inconsistent with its right to arbitration. *Id.* at 1020. Several facts supported the court's decision. The general contractor had waited fifteen months after litigation started before moving to compel arbitration. *Id.* at 1020. Scheduling orders had been put into place, and when answering a separate complaint filed by the subcontractor, the general contractor had never asserted arbitration was the correct venue. *Id.* The parties had participated in full discovery, including producing documents and taking depositions. *Id.* The matter was also ready for trial. *Id.*

These cases illustrate a general theme—a party cannot litigate over an extended amount of time and then seek arbitration at the last minute. This is what ETS has done in this case. Richard Johnson joined the case on July 8, 2014. (Doc. 29). Jose Alvarez joined the case on February 13, 2015. (Doc. 54). ETS may claim, at least for Jose Alvarez, that six months is not that much of a delay.  But this looks at the issue too narrowly. Rather, at all

times, ETS knew that it had the right to arbitrate, and because the fluid engineers are all similarly situated, ETS could have moved to stay proceedings pending arbitration of any opt-in subject to the agreement. The United States Court of Appeals for the Sixth Circuit was faced with this issue and concluded that a defendant's failure to timely raise arbitration in an FLSA collective action affects all plaintiffs the same, irrespective of when they opted in. *Gunn v. Npc Int'l*, No. 14-6036, 2015 U.S. App. LEXIS 15321, at *15 (6th Cir. Aug. 28, 2015). In so concluding, the United States Court of Appeals for the Sixth Circuit noted the broad remedial purpose of the FLSA and the collective-action mechanism. *Id.* at *15–16. The Court then went on to note that these "advantages would . . . be unnecessarily and imprudently subverted if the waiver issue had to be individually assessed in relation to each plaintiff." *Id.* at *16.

Trial is set for November 2, 2015. Even now, ETS has not moved to stay the proceedings as to Johnson or Alvarez or moved to compel arbitration. Instead, it filed a motion for summary judgment. A motion for summary judgment seeks judgment as a matter of law as to Johnson and Alvarez, which is fundamentally inconsistent with exercising a right of arbitration.

Furthermore, ETS has filed other motions that impact Johnson and Alvarez. ETS sought to have the case decertified, which would result in the dismissal of Johnson and Alvarez. (Doc. 69). ETS also seeks summary judgment on the fluctuating workweek method of calculating damages against **all** Plaintiffs, including Johnson and Alvarez. (Doc. 72 at 110). This is not just an oversight; ETS specifically cited to the deposition testimony of Richard Johnson in support of its argument. *Id.* ETS is trying to take

advantage of the litigation machine while simultaneously claiming it has a right to arbitrate. This is precisely the scenario courts have held to be inconsistent with a party's right to arbitration.

But the problems do not end there. The arbitration agreement contains severe limitations on discovery. (Doc. 71-2 at 2). For example, "[a] deposition of a corporate representative shall be limited to no more than four designated subjects." (Doc. 71-2 at 2). Yet, in this case, Plaintiffs served a 30(b)(6) notice with **forty** topics, and ETS did not object or seek to enforce the arbitration agreements. (*30(b)(6) Notice* [Ex. A]). ETS also produced documents related to both Richard Johnson and Jose Alvarez, including personnel files and payroll documents. ETS also deposed Richard Johnson. And in exchange for multiple extensions, ETS agreed to toll the statute of limitations for **all** class members that joined, not just those who did not sign arbitration agreements. All of these facts taken together evinces an intent to litigate Richard Johnson and Jose Alvarez's claims in court, not at arbitration. And as a result of ETS' inexcusable delay, Plaintiffs Richard Johnson and Jose Alvarez are prejudiced.

C.      Prejudice.

The United States Court of Appeals for the Eighth Circuit has held that the "prejudice threshold . . . is not onerous." *Hooper*, 589 F.3d at 923 (citing *Cabinetree of Wis. v. Kraftmaid Cabinetry*, 50 F.3d 388, 390 (7th Cir. 1995)).[1] "Prejudice results when . . . parties litigate substantial issues on the merits, or when compelling arbitration would require a

---

[1] As illustrated by the *Cabinetree* case, the United States Court of Appeals for the Seventh Circuit does not have a prejudice requirement. 50 F.3d at 390. The fact the United States Court of Appeals for the Eighth Circuit cited to *Cabinetree* illustrates just how easy it is to meet the prejudice burden.

duplication of efforts." *Id.* at 923 (quoting *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003)).

The parties are only two months from trial. ETS has inexcusably delayed arbitration for at least a year for Richard Johnson[2] and over six months for Jose Alvarez. Trial preparation has began. The Plaintiffs have prepared damages calculations on behalf of Jose Alvarez and Richard Johnson. ETS has participated in discovery, including deposing Richard Johnson. ETS has moved for summary judgment on the fluctuating workweek method of calculating damages for both Jose Alvarez and Richard Johnson. The Plaintiffs have filed a comprehensive motion for summary judgment, so now ETS has seen Plaintiffs' hand ahead of time.

ETS' inexcusable delay substantially limits Richard Johnson's and Jose Alvarez's recovery. ETS agreed to toll the statute of limitations as of September 1, 2014. (Doc. 68 at ¶ 138). The statute of limitations under the FLSA is two years or three years if the plaintiff can prove the defendant's violations were willful. *See* (Doc. 67 at 10–12). If Richard Johnson and Jose Alvarez are dismissed, their statute of limitations will reset, and they will lose damages from September 1, 2014 moving forward. For example, if they filed for arbitration on September 1, 2015, they could only receive damages going back to September 1, 2012, assuming they proved willfulness. As it stands now, they can receive damages going back to 2011. ETS' delay alone would cost Richard Johnson a year and Jose Alvarez over six months of damages even if tolling is not taken into consideration. The arbitration agreement seeks this result: "The Party seeking to arbitrate a dispute must

---

[2] As discussed above, Richard Johnson never signed the arbitration agreement. But in an abundance of caution, Plaintiffs discuss waiver as to him as well.

submit written notice of the claim . . . within the time period prescribed by the statute or common law cause of action under which the claim is brought." (Doc. 71-2 at 2).

ETS cannot delay arbitration until all of the cards are on the table. ETS has seen Plaintiffs' damages calculations, their arguments on summary judgment, and took the litigation to two months before trial before ever seeking to enforce the arbitration agreement. Arbitration would undoubtedly require a duplication of efforts and unnecessary expense. The arbitration agreement purports to represent the most efficient and cost-effective way of handling any disputes, but the agreement cannot serve this purpose when a party delays enforcing it just to see the course of litigation. *See Cabinetree of Wis.*, 50 F.3d 388 at 391 ("Neither in its briefs nor at oral argument did Kraftmaid give any reason for its delay in filing the stay besides needing time 'to weigh its options.' That is the worst possible reason for delay."). As the United States Court of Appeals for the Seventh Circuit noted: "[T]he failure of either of [the parties] to move promptly for arbitration is powerful evidence that they made their election—against arbitration." *Id.* ETS made that election here. Its motion for summary judgment should be denied.

> 3.    *The Fluctuating Workweek Method of Calculating Damages is Inapplicable.*

ETS has moved for summary judgment on the fluctuating workweek method of calculating damages, claiming all Plaintiffs "understood that their salary was intended to compensate them for all hours worked whether above or below 40." (Doc. 72 at 10). This conclusion is not true.

The fluctuating workweek is a method of calculating damages in a FLSA case. If

the fluctuating workweek applies, the hourly rate of pay for a salaried employee is calculated by dividing the weekly wage by the total number of hours that the employee worked in a given week, not forty. *Smith v. Frac Tech Servs., LLC*, No. 4:09CV00679, 2011 U.S. Dist. LEXIS 3165, at *110 (E.D. Ark. Jan. 11, 2011) (citing *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 666 (7th Cir. 2010)). Ultimately, the fluctuating workweek reduces damages in two ways: first, the regular rate is reduced because the hourly rate is determined by dividing the salary by the total hours worked, not forty, and second, the overtime rate is reduced to 50% of the hourly rate, not the normal 150%. *Id.* (citing *Urnikis-Negro*, 616 F.3d at 672. The factual issue regarding the application of the fluctuating workweek is whether the salary is intended to compensate the employee for *all* of the hours worked. *Id.*

It is undisputed that the mulching division Plaintiffs were paid based on a 50-hour workweek. **(Resp. SUMF ¶ 12)**. They were not paid based on a fluctuating workweek. In addition, fluid engineers received nondiscretionary "day bonuses" each day they operated a mixing plant. Under the FLSA regulations, "nondiscretionary" bonuses include any bonuses made "pursuant to any prior contract, agreement, or promise." 29 C.F.R. § 778.211(c). The regulation goes on to provide examples of nondiscretionary bonuses:

> Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in

this category. They must be included in the regular rate of
pay.

Likewise, even if the amount of the bonus is discretionary, as long as the *fact* of the

bonus is not discretionary, the bonus is still nondiscretionary. 29 C.F.R. § 778.211(b). The

bonuses are also nondiscretionary even if the bonus is contingent on conditions being

fulfilled. *Caraballo*, 969 F. Supp. 2d at 1017.

Under the FLSA, if employees receive nondiscretionary bonuses as a part of their

pay, the fluctuating workweek method of calculating damages cannot be used. *Sisson v.

Radioshack Corp.*, No. 1:12CV958, 2013 U.S. Dist. LEXIS 40135, at *17–18 (N.D. Ohio Mar.

11, 2013); *Smith*, 2011 U.S. Dist. LEXIS 64079, at *13–15. This is because if an employee

receives bonuses, he or she is not receiving a set salary for all hours worked. The

Department of Labor, Wage and Hour Division addressed this issue in its April 5, 2011

Interpretive Bulletin. (Doc. 66-11). There, the Department of Labor had to determine

whether bonuses defeat the fluctuating workweek. *Id.* The Department of Labor noted:

> While the Department continues to believe that the payment
> of bonus and premium payments can be beneficial for
> employees in many other contexts, we have concluded that
> unless such payments are overtime premiums, they are
> incompatible with the fluctuating workweek method of
> computing overtime. . .

*Id.* The Department of Labor stated that allowing these types of bonuses would defeat the

purpose of the fluctuating workweek because it would result in wide disparities in

employees' weekly pay, which is inconsistent with the purpose of the fluctuating

workweek. *Id.* at 18850. Employers would be incentivized in shifting a large portion of

employees' compensation to bonuses. *Id.* at 18550.

Fluid engineers were promised and received "day bonuses" for each day they worked while the mixing plant was operational. **(Resp. SUMF ¶¶ 11–13)**. As a result, these bonuses were nondiscretionary. Because fluid engineers received these bonuses, they were not paid "a *fixed* weekly wage for hours that fluctuate from week to week." *Clark v. Shop24 Global, LLC*, No. 2:12-cv-802, 2015 U.S. Dist. LEXIS 5496, at *36 (S.D. Ohio Jan. 16, 2015) (quoting *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 674 (7th Cir. 2010)). Promising bonuses is "conduct inconsistent with an agreement between the parties for a fixed weekly wage as compensation for fluctuating work hours." *Id.* at *46. Therefore, the fluctuating workweek method of calculating damages is inapplicable here.

## V. Conclusion

Undoubtedly, arbitration is favored under the law. But this favor goes to the wayside when an employer waits to see how litigation will unfold and then moves to arbitrate at the last minute. Plaintiffs have been prejudiced by ETS' inexcusable delay; they have lost damages under the applicable statute of limitations, and ETS has seen all of the cards on the table. Anything that occurs in arbitration will be unnecessarily duplicative. ETS does not get to act inconsistently with arbitration and then pull it out at the last minute simply because it needed to weigh its options.

In addition, the fluctuating workweek method of calculating damages is inapplicable here. The mulching division employees understood that their salary covered a 50-hour workweek, not that their salary covered all hours worked. The fluctuating workweek is also inapplicable to the fluid engineers because they received nondiscretionary "day bonuses." ETS' motion for partial summary judgment should be

denied.

Respectfully submitted,

/s/ John Holleman
John Holleman – AR Bar #91056
jholleman@johnholleman.net
Timothy A. Steadman – AR Bar #2009113
tim@johnholleman.net
Matthew M. Ford – AR Bar #2013180
matthew@johnholleman.net

HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

Christopher R. Heil, ABN  92128
Lloyd "Tre" Kitchens, ABN 99075
THE BRAD HENDRICKS LAW FIRM
500 C Pleasant Valley Drive
Little Rock, AR 72227
Tel. 501.588.0549
Fax 501.661.0196

## CERTIFICATE OF SERVICE

I, John Holleman, certify that a true and accurate copy of the foregoing document was sent via CM/ECF on this 1st day of September, 2015 to the following:

Michael S. Moore, mmoore@fridayfirm.com
Harold Wayne Young , Jr    wyoung@fridayfirm.com
Friday, Eldredge, & Clark, LLP
2000 Regions Center
400 West Capitol Avenue
Little Rock, AR 72201-3493
(501) 370-1526

/s/ John Holleman
John Holleman